IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, | ) ) ) | |
| Plaintiff, | ) ) | No.: 11-cv-3378 |
| vs. | ) ) | |
| PHUSION PROJECTS, INC., et al. | ) ) | |
| Defendants. | ) | |

**RESPONSE TO DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

NOW COMES the Plaintiff, SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA (hereinafter "Selective"), and for its Response in opposition to the Motion to Dismiss filed by Defendants, PHUSION PROJECTS, INC., PHUSION PROJECTS, LLC, CHRIS HUNTER, JEFF WRIGHT, and JAISEN FREEMAN (collectively referred to herein as "the Phusion Defendants"), states as follows:

**INTRODUCTION**

The Phusion Defendants have been named as defendants in a variety of wrongful death and other types of lawsuits throughout the United States related to their involvement in the development, manufacture, advertising and sale of a caffeinated, alcohol product known as "Four Loko." In addition to these lawsuits, a number of demand and/or notice letters have been issued to the Phusion Defendants asserting additional claims or potential claims. The Phusion Defendants submitted these claims and potential claims (later defined herein as the "Underlying Claims") to Selective and requested that Selective defend and indemnify the Phusion Defendants pursuant to a policy of insurance Selective issued. Under the clear and unambiguous terms of Selective's policy, however, it is readily apparent that the policy does not provide coverage for

1

the Underlying Claims. As such, Selective properly advised the Phusion Defendants that no coverage was available under its policy for the Underlying Claims. The Phusion Defendants disputed Selective's coverage determination. Accordingly, Selective filed this action seeking a judicial declaration that it was not obligated to defend or indemnify the Phusion Defendants in regard to the Underlying Claims.

Shortly after Selective filed the instant action, the Phusion Defendants withdrew their request for defense and indemnification "at this time." Nevertheless, the Phusion Defendants continue to dispute Selective's coverage determination and expressly reserved the ability to reassert their demand for coverage from Selective for the Underlying Claims at any point in the future. Based on this temporary withdrawal of their demand for coverage, the Phusion Defendants now move to dismiss this action for lack of subject matter jurisdiction, arguing that no justiciable case or controversy exists. Contrary to the Phusion Defendants' position, however, a justiciable case and controversy exists between the parties because Phusion continues to dispute Selective's coverage determination and remains free to file suit against Selective for that coverage determination at any point in the future. The express purposes of the Declaratory Judgment Act seeks to prevent what the Phusion Defendants now demand – requiring Selective to sit idle and not enforce its rights under the policy while having to "wait and see" whether it will be sued by the Phusion Defendants for its coverage determination. The Phusion Defendants' Motion to Dismiss, therefore, should be denied.

## FACTUAL BACKGROUND

Selective issued Policy No. S1904903 to PHUSION PROJECTS, INC. and PHUSION PROJECTS, LLC for the Policy Period of May 6, 2009 through May 6, 2010 (the "Policy"). *See* Plaintiff's Complaint for Declaratory Judgment (*Doc. No. 1)* ("Comp."), ¶56. In general, the

2

Policy provides liability insurance coverage for Bodily Injury and Property Damage that occurs during the Policy Period subject to its strict terms and conditions. Comp., ¶60. Pursuant to its Liquor Liability Exclusion, the Policy excludes coverage for Bodily Injury or Property Damage "which any insured may be liable by reason of … causing or contributing to the intoxication of any person; … or any statute, ordinance, or regulation relating to the sale, gift, distribution or use of alcoholic beverages." Comp., ¶61. Pursuant to its express terms and conditions, the Policy also provides coverage for Personal and Advertising Injury caused by offenses committed during the Policy Period. Comp., ¶62. The Policy also excludes coverage for Personal and Advertising Injury arising out of publication of material that was first published prior to the Policy Period. Comp., ¶64.

After the issuance of the Policy, the Phusion Defendants were served with a number of lawsuits, demand letters, and notice letters of claims and potential claims (the "Underlying Claims"). Comp., ¶¶ 19-55. Phusion reported these Underlying Claims to Selective and demanded that Selective defend and indemnify the Phusion Defendants in all matters. Specifically, the Phusion Defendants reported four lawsuits (*Keiran*, *McCarroll*, *Rivera*, and *Rupp*) that alleged that the Phusion Defendants were liable for wrongful deaths and/or severe bodily injuries sustained as a result of intoxication caused by the use of the Four Loko beverage. Comp., ¶¶19-35. The Phusion Defendants reported two demand letters (*Bailey* and *Medlin*) that purported to place the Phusion Defendants on notice of additional claims for monetary damages resulting from consumption and use of Four Loko. Comp., ¶¶36-39. The bodily injuries alleged in the *Keiran, McCarroll, Rivera*, *Rupp* and *Bailey* matters occurred after the Selective Policy was cancelled. Comp., ¶¶68-71. The *Keiran, McCarroll, Rivera*, *Rupp, Bailey* and *Medlin*

matters all sought to impose liability upon the Phusion Defendants for causing or contributing to the intoxication of the individuals whom are the subject of those various lawsuits. Comp., ¶75.

In addition, the Phusion Defendants reported three additional class action lawsuits (*Serrano*, *Thomas*, and *Richardson*) that asserted consumer-fraud type claims alleging that, among other facts, consumers were injured by the misleading advertising, labeling, packaging, marketing and promotion of Four Loko, which failed to warn of the dangers associated with drinking a caffeinated beverage with a high alcohol content. Comp., ¶¶40-51. The *Serrano*, *Thomas*, and *Richardson* suits neither allege damages covered under the Policy nor an offense that occurred during the policy period. Comp., ¶¶79-80; 86-88. Finally, the Phusion Defendants sought coverage for a Federal and California Trade Dress Infringement lawsuit (*United Brands*) that alleged, in essence, that the Four Loko product resembled a product manufactured by a competitor. Comp., ¶¶52-55. The *United Brands* complaint alleged that the Phusion Defendants first infringed upon its trade dress in 2008 – prior to the inception of the policy. Comp., ¶93.

After analyzing the Policy and the allegations of the Underlying Claims, Selective advised the Phusion Defendants that no coverage existed for the Underlying Claims under the Policy. *See e.g.,* correspondence from Anita Mazakas dated January 24, 2011, copies of which are attached hereto as **Exhibit A**. The Phusion Defendants disputed Selective's coverage analysis and conclusions. *See e.g.,* e-mail from Dwight Palmer dated February 11, 2011, a copy of which is attached hereto as **Exhibit B**. Accordingly, Selective filed the instant declaratory judgment action on May 19, 2011 seeking a judicial determination of its rights and obligations under the Policy.

Shortly after Selective filed its Complaint for Declaratory Judgment, on June 22, 2011, the Phusion Defendants advised that they were "withdrawing [their] tender of defense to

Selective and request for indemnity in all matters at this time." *See* e-mail from Dwight Palmer dated June 22, 2011, a copy of which is included within Group Exhibit A attached to the Phusion Defendants' Motion to Dismiss ("Group Ex. A."). The Phusion Defendants requested that Selective dismiss the declaratory judgment action but indicated that "Phusion will continue to notify Selective of new suits and claims for informational purposes only and until otherwise advised." *Id.*

In response, Selective advised the Phusion Defendants that their withdrawal of their request for coverage appeared to be "without prejudice and that Phusion is free to reassert its request for coverage on these matters at some unspecified point in the future." *See* e-mail from Christopher T. Conrad dated July 8, 2011, a copy of which is included within Group Ex. A. As Selective advised:

> This withdrawal, therefore, does not provide [Selective] with any certainty as to [the Phusion Defendants'] position under the policy, and Selective has no interest in delaying resolution of the issues raised in the declaratory judgment action to some uncertain future time. Accordingly, unless Phusion and the other defendants confirm that their request for defense and indemnity on all reported claims is withdrawn for all purposes and with prejudice, Selective … will proceed with the declaratory judgment action. *Id.*

At no time, have the Phusion Defendants confirmed that their withdrawal of coverage was made with prejudice and for all purposes.

Thereafter, the Phusion Defendants advised Selective that, pursuant to legal authority interpreting Illinois' "targeted tender rule," the Phusion Defendants' withdrawal of coverage "deactivated" Selective and required Selective to "'stand by' should Phusion need Selective in the future." *See* correspondence from Dwight Palmer dated July 18, 2011, a copy of which is included within Group Ex. A. The Phusion Defendants reiterated their request that Selective

5

dismiss its lawsuit because Selective "is on standby so there is no justiciable case or controversy to warrant Selective's declaratory action." *Id.*

Selective again responded in good faith to the Phusion Defendants. *See* correspondence from Christopher T. Conrad dated July 22, 2011, a copy of which is attached hereto as **Exhibit C**. Selective distinguished the case law cited by Phusion and explained that the targeted tender rule did not apply as Selective was unaware of any other policies from which the Phusion Defendants sought coverage for all of the Underlying Claims. *Id.* Nevertheless, in order to give the Phusion Defendants every opportunity to explain its position under the targeted tender rule, Selective asked the Phusion Defendants to identify a) what other insurance policies were available to the Phusion Defendants for the Underlying Claims, b) what insurer(s) the Phusion Defendants had "targeted" to provide a defense and/or indemnity for the Underlying Claims, and c) whether such insurer(s) were in fact providing a defense or indemnity to the Phusion Defendants. *Id.* Furthermore, Selective advised that, pursuant to relevant case law, there exists a justiciable case or controversy to support Selective's declaratory judgment action so long as the Phusion Defendants can reassert their claim for coverage under the Policy or file a subsequent lawsuit against Selective arising out of Selective's coverage position at some point in the future. *Id.*

Subsequently, the Phusion Defendants identified that they "targeted [their] tender of defense to [their] other insurer" – Indiana Insurance Company ("Indiana") – who purportedly accepted their tender and was paying for the defense of the "underlying cases." *See* correspondence from Dwight Palmer dated August 3, 2011, a copy of which is included within Group Ex. A. In response, Selective requested confirmation as to which of the Underlying Claims Indiana had agreed to defend and indemnify. *See* correspondence from Christopher T.

Conrad dated August 4, 2011, a copy of which is included within Group Ex. A. Furthermore, Selective again explained that the targeted tender rule did not apply because the policies issued by Selective and Indiana were issued for successive or consecutive policy periods and, thus, the policies failed to establish the "concurrent coverage obligation" requirement of the targeted tender rule. *Id.* To date, the Phusion Defendants have failed to identify whether Indiana has agreed to provide a defense and indemnity for all of the Underlying Claims.

The Phusion Defendants filed their Motion to Dismiss on September 7, 2011. Motion to Dismiss (*Doc. No.* 17*).* Since they filed their Motion to Dismiss arguing that they do not seek coverage under the Policy, the Phusion Defendants have reported fifteen new claims or potential claims to Selective "in compliance with the policy notice provision." *See* e-mails from Dwight Palmer dated September 8, and September 26, 2011, copies of which are attached hereto as **Exhibit D**.

## LEGAL STANDARD

The Phusion Defendants ask the Court to dismiss this case arguing that the Court lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss pursuant to Rule 12(b) tests the sufficiency of a complaint and asks the court to determine whether the complaint sets forth sufficient factual allegations to establish a claim for relief. Fed. R. Civ. P. Rule 12(b). To survive a Rule 12(b) motion, the complaint must contain enough factual matter (taken as true) to "raise [the] right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition, Courts have recognized that a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds. *See Smith v. Kutchins*, No. 84 C 10331, 1985 WL 4263, at *1 (N.D. Ill. Nov. 27, 1985). Facial challenges to subject matter jurisdiction are based solely on the

allegations in the complaint. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). When considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). When, however, a defendant raises a factual attack on subject matter jurisdiction, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). If those allegations establish federal claims, jurisdiction exists. *Id.*

## ARGUMENT

The gravamen of the Phusion Defendants' argument in support of their motion to dismiss is essentially that, by withdrawing their request for coverage under the Policy and attempting to place Selective on "standby" under Illinois' so-called "targeted tender rule," the Court lacks subject matter jurisdiction to hear this coverage dispute because there is no longer a justiciable case or controversy. This argument is patently without merit. Under well-established precedent, a justiciable case or controversy exists to support the instant matter because the Phusion Defendants continue to dispute Selective's coverage interpretation, are free to reassert their demand for coverage for the Underlying Claims under the Policy at some point in the future, and can subsequently file a lawsuit against Selective for its prior denial of coverage for the Underlying Claims. Furthermore, the Phusion Defendants' reliance upon the targeted tender rule is similarly misplaced as the targeted tender rule has no application in the present matter where the Phusion Defendants are unable to establish two or more insurance policies with concurrent insurance coverages. Nevertheless, even if the targeted tender rule applied, this argument is a red herring as the Phusion Defendants point to no authority to establish, much less even suggest, that

8

the targeted tender rule somehow precludes a "stand by" insurer from pursuing a declaratory judgment action to determine its rights and obligations under the policy "deselected" by the insured.

### I. SUBJECT MATTER JURISDICTION EXISTS BECAUSE A CASE OR CONTROVERSY EXISTS BETWEEN THE PARTIES.

The Declaratory Judgment Act (the "Act"), 28 U.S.C. § 2201, permits federal courts to declare the rights of parties only in cases involving an "actual controversy." In pertinent part, the Act provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such [a] declaration, whether or not further relief is or could be sought. . . .

28 U.S.C. § 2201.

The statutory standard for determining whether an "actual controversy" exists within the meaning of the Act is the same as that under the "case or controversy" requirement of the Constitution. *Hendrix v. Poonai*, 662 F.2d 719, 721 (11th Cir. 1981). The Supreme Court has defined a "controversy" in the Constitutional sense as:

> one that is appropriate for judicial determination . . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests . . . . It must be a real and substantial controversy admitting for specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937). The party claiming declaratory judgment jurisdiction must establish that an actual controversy existed at the time of the filing of the complaint. *Geisha, LLC v. Tuccillo*, 525 F.Supp.2d 1002, 1013 (N.D. Ill. 2007).

In *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, the Supreme Court articulated the test for an "actual controversy" under the Declaratory Judgment Act: "the question in each case is

9

whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 312 U.S. 270, 273 (1941). The overall purpose of the Act is "to settle actual controversies before they have ripened into violations of law or legal duty or breach of contractual obligations" (*Franklin Life Ins. Co. v. Johnson*, 157 F.2d 653, 657 (10th Cir. 1946)) and to resolve outstanding controversies without forcing a party to wait and see if it will be subjected to suit (*Sherman-Williams Co. v. Holmes County*, 343 F.3d 383, 398 n. 8 (5th Cir. 2003)). Thus, the fact that a party's "liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action." *Assoc. Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 34 (2d Cir. 1992). Further, insurance litigation "has become the paradigm for asserting jurisdiction despite 'future contingencies that will determine whether a controversy actually becomes real.'" *Id.*; *see also Assoc. Indem. Corp.*, 961 F.2d at 35. Courts have recognized that "[t]o hold a person whose interest is contingent may not be compelled to defend an action for a declaratory judgment would greatly diminish the field and lessen the utility of declaratory judgment actions." *Franklin Life Ins. Co.*, 157 F.2d at 657 (finding a contingent beneficiary in a life insurance policy, whose right to any proceeds thereunder was contingent upon the death of the primary beneficiary, was an interested and proper party to the declaratory judgment action).

At the outset, the operative inquiry by the Court is whether a justiciable case or controversy existed at the time of the filing of the declaratory judgment action. *Geisha, LLC*, 525 F.Supp.2d at 1013. Here, it is undisputed that a case or controversy existed between the parties at the time Selective filed its declaratory judgment action. The Phusion Defendants demanded coverage for the Underlying Claims pursuant to the Policy, Selective properly denied coverage

for the Underlying Claims, and Phusion disagreed with and challenged Selective's coverage determination. Indeed, the Phusion Defendants do not dispute that a controversy existed at that time.

While the Phusion Defendants have – for the time being – withdrawn their request for coverage under the Policy for the Underlying Claims, the case or controversy between the parties has not disappeared. The present controversy stems from the parties' disagreement of their respective rights and obligations under the Policy in relation to coverage (or lack thereof) for the Underlying Claims. Significantly, the Phusion Defendants neither concede that coverage was properly denied by Selective under the Policy nor do they withdraw their objection to Selective's denial of coverage. The parties' adverse positions with respect to coverage or the interpretation of the Policy taken prior to the filing of this action have not changed. In fact, by attempting to preserve their right to reassert their claim for coverage for the Underlying Claims, the Phusion Defendants expressly indicate that they continue to dispute Selective's determination that no coverage exists for the Underlying Claims. The facts germane to this coverage dispute are neither hypothetical nor abstract as the allegations and pleadings of the Underlying Claims are definite and concrete. Consequently, the controversy between the parties, i.e., the interpretation of the Policy as it relates to coverage for the Underlying Claims, remains definitive, concrete, live, and appropriate for judicial determination. *See Aetna*, 300 U.S. at 242 (recognizing that a dispute related to the legal rights and obligations arising from a contract of insurance are definite and concrete, not hypothetical or abstract). As a result, subject matter jurisdiction exists.

In addition, the potential of a lawsuit at some point in the future by the Phusion Defendants against Selective for its denial of coverage, which the Phusion Defendants reserve the right to assert, is sufficient to establish that a justiciable case or controversy exists. *See*

11

*American Ins. Co. v. Evercare Co.*, 699 F. Supp. 2d 1355, 1359 (N.D. Ga. 2010) (holding that the possibility or conjecture of a future lawsuit is sufficient to establish a controversy or threatened injury to support a declaratory judgment action). It is all but a certainty that the Phusion Defendants will reassert their claim for coverage or file suit against Selective as, even after the Phusion Defendants filed their Motion to Dismiss, they reported fifteen new potential claims to Selective. There is no need to continue to report claims to Selective if the Phusion Defendants do not intend to seek coverage under the Policy.

The Phusion Defendants' Motion to Dismiss similarly fails because the relief sought runs afoul of the express purpose of the Declaratory Judgment Act. Even though the Phusion Defendants dispute Selective's interpretation of the Policy, they essentially request that the Court delay any ruling on the policy interpretation until some uncertain point in the future when the Phusion Defendants elect to reassert their claim for coverage or chose to sue Selective. In other words, the Phusion Defendants want the right to challenge Selective's coverage interpretation when they see fit, but they also want to prohibit Selective from exercising its right to seek a judicial confirmation of its disputed coverage interpretation. The Phusion Defendants, therefore, ask the Court to force Selective to "wait and see" if it will be subject to suit over its coverage determination stemming from a factual scenario that exists today and is ripe for judicial adjudication now. This is contrary to the purpose of declaratory judgment actions, which expressly permits a party to seek a determination of its contractual rights before it breaches an agreement or is subject to suit. *See Franklin Live Ins. Co.*, 157 F.2d at 657; *Sherman-Williams Co.*, 343 F.3d at 398 n. 8.

Finally, the brief moving papers filed by the Phusion Defendants provide no facts or law to dispute the foregoing analysis. Indeed, the main case relied upon by the Phusion Defendants,

12

*Alvarez v. Smith*, 130 S.Ct. 576 (2009), is easily distinguishable. In *Alvarez*, the Supreme Court found that a lawsuit brought by property owners for unlawful taking of property no longer presented an actual controversy between the parties because the state had returned all property it seized and the property owners had forfeited any relevant cash or accepted as find the return of some of it. *Alvarez*, 130 S.Ct. at 578. Put another way, no controversy existed in *Alvarez* because the parties had resolved their dispute. In contrast, the parties in the present case have not resolve their dispute and a controversy exists as the Phusion Defendants continue to contest Selective's denial of coverage under the Policy and reserve their right to demand coverage in the future. Therefore, because an actual controversy exists between the parties to confer subject matter jurisdiction, the Phusion Defendants' motion must be denied.

    **II.    THE TARGETED TENDER RULE IS NOT ONLY INAPPLICABLE BECAUSE CONCURRENT POLICIES DO NOT EXIST BUT IT DOES NOT PRECLUDE AN INSURER FROM DETERMINING ITS RIGHTS UNDER A POLICY.**

The so-called targeted tender rule under Illinois law provides a mechanism whereby an insured, when faced with two or more policies that provide ***concurrent coverage*** for the same loss, is permitted the "right to choose or knowingly forgo an insurer's participating in a claim." *Chicago Hosp. Risk Pooling Program v. Ill. State Med. Inter-Insurance Exch.*, 325 Ill. App. 3d 970, 974, 976 (2001). This rule, however, is only applicable where two or more insurance policies provide coverage for the same loss, and the rule "presumes that both insurers have a ***concurrent coverage obligation***." *Id.* at 980 (emphasis added). It is not necessary that the policies provide "identical coverage in all respects" in order for the two to be considered concurrent; rather, "as long as the particular risk actually involved in the case is covered by both policies, the coverage is duplicate." *Id.* at 983.

In the present case, the Phusion Defendants have provided no evidence to the Court to support the application of the targeted tender rule. The Phusion Defendants' moving papers do not identify the second policy that provides coverage for the Underlying Claims. The Phusion Defendants have not established that the second policy provides concurrent coverage with Selective's Policy. Nevertheless, in prior communications with Selective, the Phusion Defendants identified Indiana Insurance Company as their other insurer. Indiana has similarly initiated a declaratory judgment action against the Phusion Defendants. In its Declaratory Judgment Complaint, Indiana stated that its policy was issued with a policy period of May 6, 2010 through May 6, 2011. Amended Complaint for Declaratory Judgment, ¶40, a copy of which is attached hereto as **Exhibit E**. Selective's Policy, however, was issued for the prior policy period of May 6, 2009 to May 6, 2010. Because the policy periods of these two policies are consecutive, the policies cannot provide concurrent coverage or both provide coverage for the Underlying Claims. Thus, the targeted tender rule cannot apply. The Court's opinion in *United States Fidelity and Guaranty Co. v. Shorenstein Realty*, No. 07 C 3179, 2011 WL 1814340 (N.D. Ill. May 11, 2011) cited by the Phusion Defendants, supports this reasoning as this case discussed the application of the targeted tender rule to several overlapping, concurrent insurance policies.

Finally, even if the targeted tender rule were somehow applicable in this situation, it has no bearing on the case or controversy analysis under the Declaratory Judgment Act. Simply put, nothing in the targeted tender rule precludes an insurer from asserting a declaratory judgment action against its insured even if the insured "deselects" the insurer's insurance policy. Therefore, not only is the target tender rule inapplicable, it is a red herring that provides no assistance to the Court's resolution of the instant dispute.

## CONCLUSION

WHEREFORE, because subject matter jurisdiction exists, the Plaintiff, SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, hereby requests that this Court deny the Phusion Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.

                                      SELECTIVE INSURANCE COMPANY
                                      OF SOUTH CAROLINA

                                      /s/ Christopher T. Conrad
                                            One of its attorneys

David A. Wilford
Christopher T. Conrad
Justin A. Seccombe
WILFORD CONRAD LLP
760 West Main Street, Ste. 210
Barrington, Illinois 60010
(224) 848-4721
Fax: (224) 425-5865
dwilford@wilfordconrad.com
cconrad@wilfordconrad.com
jseccombe@wilfordconrad.com

Attorneys for Plaintiff, SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA

## CERTIFICATE OF SERVICE

    I, Justin A. Seccombe, an attorney, hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/EFC system on October 11, 2011, which will send electronic notification of such filing to all counsel of record.

                                                  Justin A. Seccombe