IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) No. 11 C 3378 |
| v. | )<br>) |
| **PHUSION PROJECTS, INC.,** et. al., | )<br>) |
| Defendants. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

This is a declaratory action in which plaintiff seeks to establish the parties' rights and obligations pursuant to a general liability insurance agreement that plaintiff issued to the corporate defendants ("Phusion"). Now before me is defendants' motion to dismiss, which asserts that there exists no "actual controversy" within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201. For the reasons that follow, I grant the motion.

I.

Plaintiff's five-count complaint for declaratory judgment seeks specific rulings that plaintiff is not obligated, on various grounds, to provide coverage for claims asserted against defendants in certain third-party litigation (referred to by the parties, and in this opinion as well, as the "Underlying Claims"). In general terms, the Underlying Claims allege that defendants are involved in

1

the formulation and various aspects of the commercialization of a caffeinated, alcoholic beverage known as "Four Loko," the consumption of which is alleged to have caused death or serious bodily injuries, and the marketing, advertising, and labeling of which is claimed to have caused various economic injuries. Defendants reported the Underlying Claims to plaintiff and initially demanded that plaintiff defend and indemnify defendants in each of them. Plaintiff responded by advising defendants of its position that no coverage was available under defendants' policy for any of the Underlying Claims and by filing the instant action.

Shortly thereafter, Phusion withdrew its tender of defense and request for indemnification and asked plaintiff to voluntarily dismiss the complaint in this case. Phusion represented to plaintiff that it was seeking coverage from another insurer, but advised plaintiff that it would "continue to notify [plaintiff] of new suits and claims for informational purposes only and until otherwise advised," as required pursuant to the policy. Plaintiff declined to dismiss the complaint on the grounds that defendants refused to withdraw their request for coverage "with prejudice and for all purposes," noting that, indeed, defendants have continued to report new claims to plaintiff. In each instance of reporting, however, Phusion has advised defendants that it was merely providing notice of the new claims "in compliance with the policy notice provision," and explicitly stated that it was "not

requesting a defense or any other coverage from [plaintiff]...at this time."

## II.

"The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *MedImmune, Inc., v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). Defendants argue that plaintiff's request for declaratory relief is too remote and speculative to amount to an actual controversy in view of defendants' unambiguous withdrawal of their tender of defense and request for indemnification. Defendants insist that their "deactivation" of plaintiff released plaintiff from its duty to defend in the Underlying Claims, and that the mere possibility that defendants may choose to "reactivate" plaintiff in the future does not justify forcing them to fight what is, for now, a "hypothetical battle over coverage that may never become reality." Def.'s Reply, 4.

Plaintiff responds that in view of the parties' manifest disagreement over whether the policy at issue covers the Underlying Claims, defendants' reservation of the right to reassert their demand for coverage in the future renders defendants' declaratory claims appropriate for immediate resolution. Plaintiff's argument

3

opens with the assertion that the question of whether an "actual controversy" exists focuses on the state of affairs "at the time of the filing of the complaint." Pl.'s Opp., 9, citing *Geisha, LLC v.Tuccillo*, 525 F. Supp. 2d 1002, 1013 (N.D. Ill. 2007). This argument plainly misstates the law. Although *Geisha* does, indeed, hold that a party seeking a declaratory judgment "must establish that an actual controversy existed at the time of the filing of the complaint," *id.*, the issue in that case was whether the defendant's activities "were definite enough, or had progressed sufficiently" to create a "real and immediate threat" by the time the party seeking declaratory judgment filed suit, *id.* at 1014; not, as here, whether a controversy that had undisputedly arisen by the time of filing was later neutralized by subsequent events. Accordingly, *Geisha* does not support the argument that so long as an "actual controversy" existed at the time of filing, subsequent events are irrelevant. To the contrary, the very case the *Geisha* court cited held: "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed *and that it has continued since*." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d, 1340, 1344 (Fed. Cir. 2007)(emphasis added). Indeed, the Supreme Court has made clear that an "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Alvarez v. Smith*, 130 S. Ct. 576, 580 (2009).

...

Accordingly, the fact that an "actual controversy" existed when plaintiff filed its declaratory action does not overcome the arguments defendants raise.

In *MedImmune*, the Court reaffirmed the continuing validity of its decades-old summary of the "actual controversy" requirement: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. at 127, (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Court explained that the Declaratory Judgment Act was intended to ameliorate the dilemma faced by potential defendants who must choose between "abandoning [their] rights or risking prosecution." *MedImmune*, 549 U.S. at 129. As the Second Circuit has noted--indeed, in a case plaintiff cites--where "future contingencies...will determine whether a controversy ever actually becomes real," courts "should focus on 'the practical likelihood that the contingencies will occur." *Associated Indemnity Corp. v. Fairchild Industries, Inc.*, 961 F.2d 32, 35 (2nd Cir. 1992). In *Associated Indemnity*, the contingency was whether the insured's liabilities would exceed a minimum amount required to trigger insurance coverage. Although neither party knew for certain what the final amount would be, the Second Circuit concluded that

because the insured had a reasonable basis for arguing that the minimum would be met, its declaratory action seeking coverage asserted an actual controversy. In this case, the "contingency" is whether defendants will, someday, reverse their present course of declining to seek coverage for the Underlying Claims from plaintiff. While it is true that defendants reserve their right to take this step, defendants (who are, at a minimum, better situated than plaintiff to assess the likelihood that this "contingency" will occur) have expressly disavowed their current intention to seek coverage from plaintiff and have characterized any future claim against plaintiff as "hypothetical."

Defendants' withdrawal of their claim distinguishes this case from both *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937), and *American Insurance Co. v. Evercare Co.*, 699 F. Supp. 2d 1355 (N.D. Georgia 2010). In *Aetna*, the insured had "a current claim of a present, specific right," 300 U.S. at 242, while in *American Insurance*, the insured had an "ongoing demand" for coverage. 699 F. Supp. 2d. at 1359. Defendants in this case have neither. Moreover, plaintiff is not faced with the kind of "dilemma" that the Declaratory Judgment Act sought to ameliorate: it is not presently required to take any action with respect to the Underlying Claims, or to refrain from taking any action, to eliminate the risk of liability. Nor does dismissing its declaratory action leave plaintiff in an untenable "wait-and-see"

position. To the extent it must wait and see if it will be called upon to defend and indemnify defendants, plaintiff suffers no discernable prejudice on account of the wait. Even in the event defendants decide to assert a claim for coverage at some point in the future (and assuming the parties maintain their current, opposing coverage positions), plaintiff will be no worse off at that point than it is today.[1] While it may be true, as plaintiff argues, that the facts necessary to adjudicate whether coverage for the Underlying Claims exists under the relevant policy are definite and concrete, rather than hypothetical or abstract, neither party appears to have any significant interest in having plaintiff's hypothetical future claim resolved now. Nor, moreover, would it be in the interest of conservation of resources--either the parties' or the court's--to do so.

Finally, Illinois law supports defendants' argument that where an insured has "deactivated" an insurer with respect to a particular claim, that insurer is "relieved of its obligation to the insured with regard to that claim," and neither the insured's ongoing notification to the insurer of potential new claims, nor the insured's indication that it is placing plaintiff on "standby"

---

[1] In this respect, plaintiff's position is distinct from that of declaratory plaintiffs in the patent context (where declaratory actions are commonplace), where an accused infringer's potential liability increases with each day it engages in putatively infringing activity, or, conversely, it is forced to forego revenue it may ultimately be found to have been entitled to earn.

7

triggers a renewed duty to defend. See *Legion Ins. Co. v. Empire Fire and Marine Ins. Co.*, 822 N.E. 2d 1, 5-6 (Ill. App. Ct. 2004). In short, plaintiff has no present duty whatsoever to defendants with respect to the Underlying Claims, and the possibility that defendants may someday attempt to trigger some duty under their policy is, for now, too speculative to support jurisdiction under the Declaratory Judgment Act.

### III.

Because I conclude that no "actual controversy" exists at this juncture, defendants' motion to dismiss is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: November 15, 2011